UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WLADIMIR KLITSCHKO,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**INTERNATIONAL BOXING FEDERATION, INC., d/b/a the INTERNATIONAL BOXING FEDERATION, the IBF, the UNITED STATES BOXING ASSOCIATION, or the USBA; DAVARRYL WILLIAMSON; JOHN DOES 1 through 20; and ABC CORPORATIONS 1 through 20,**<br><br>    **Defendants.** | 05-CV-2578 (WJM)<br><br><br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

Jan Alan Brody, Esq.
Melissa E. Flax, Esq.
Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, PC
5 Becker Farm Road
Roseland, NJ 07068

Ronald A. DiNicola, Esq.
Douglas W. Bordewieck, Esq.
Mitchell Silberberg & Knupp LLP
11377 West Olympic Blvd.
Los Angeles, CA 90064

    *(Attorneys for Plaintiff Wladimir Klitschko)*

Linda P. Torres, Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Three Gateway Center
100 Mulberry St.
Newark, NJ 07102

    *(Attorney for Defendant International Boxing Federation, Inc.)*

David A. Picon, Esq.
John H. Gross, Esq.
Proskaeur Rose LLP

One Newark Center
Newark, NJ 07102

  *(Attorneys for Defendant DaVarryl Williamson)*

**MARTINI, U.S.D.J.:**

  This matter comes before the Court upon Plaintiff Wladimir Klitschko's ("Klitschko") application for a Preliminary Injunction.  The Court, by Order dated June 9, 2005, directed Defendants the International Boxing Federation ("IBF") and DaVarryl Williamson ("Williamson") to appear and show cause why the requested preliminary injunctive relief should not be granted: (a) restraining the IBF from designating Williamson as the mandatory heavyweight division challenger to the current IBF heavyweight champion, Chris Byrd ("Byrd") or, alternatively, rescinding any such designation that may have been made prior to adjudication of Klitschko's application; and (b) requiring the IBF to designate Klitschko as the next IBF mandatory challenger against whom Byrd must defend his title.  The Court heard oral argument on the application on June 22, 2005 and again on June 30, 2005.  Although the Court has throughout these proceedings made clear its belief that the best resolution of this dispute would not involve judicial intervention, unfortunately the parties have been unable to resolve their differences on their own.  Accordingly, the Court must now render its decision on Klitschko's application.  For the following reasons, Klitschko's application is **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

  The IBF, one of the three major bodies that regulate and promote professional boxing in the United States, classifies and ranks world-class professional boxers, ensures adherence to its rules, and sanctions championship and non-championship bouts.  This action concerns its

adherence to its rules regarding the ranking of professional boxers—specifically, IBF Ratings Criteria 4, which provides that boxers' "ratings must be solely based on win/loss records, level of competition, activity[,] and . . . adherence to IBF/USBA rules and regulations."  Klitschko argues that the IBF disregarded this rule as a result of improper influence from Don King Promotions when in its May 29, 2005 rankings it demoted him in favor of Williamson, who is promoted by Don King.

On May 29, 2005, the IBF issued its May 2005 rankings that reflected, among other things, the IBF's promotion of Williamson to the No. 3 spot in the "Heavyweight" category—up from his No. 4 ranking in the IBF's April 2005 rankings—and its demotion of Klitschko to the No. 4 spot—down from his No. 3 ranking in the April 2005 rankings.  The movement, according to the IBF, was based on the fact that Williamson defeated the ranked (and, coincidentally, Don-King promoted) boxer Derrick Jefferson ("Jefferson") on April 30, 2005.  At the time of their fight, the IBF, which does not rank boxers beyond the top 15 in any category, ranked Jefferson as the No. 15 heavyweight boxer.  The IBF made the move despite the fact that Klitschko had also defeated a boxer in April 2005—Eliseo Castillo ("Castillo"), who at the time was not ranked by the IBF among the top 15 heavyweight boxers—and had defeated Williamson in October 2004 in a fourth round technical decision.  The October 2004 Williamson-Klitschko fight ended in a split technical decision in Klitschko's favor after Klitschko suffered a cut caused by an accidental head butt from Williamson that prevented the fight from continuing.  Before the fight was called, Williamson had scored the only knockdown of the fight.

At the time these rankings were issued, the Nos. 1 and 2 IBF ranked heavyweight boxers were ineligible to fight the current IBF Heavyweight champion, Byrd (who is also promoted by

Don King), for the IBF heavyweight title belt in August 2005 as a result of having agreed to fight one another in an August 2005 fight to be promoted by Don King. Thus, the May 2005 movement put Williamson in position to be designated as the "leading available contender" next in line to fight Byrd.

On or about May 31, 2005, Klitschko filed both a formal and informal appeal of his demotion with the IBF. A few days later, on June 2, 2005, Klitschko filed a First Amended Complaint (referred to herein as "Compl.") challenging the propriety of his demotion and on June 8, 2005 applied for and received an Order to Show Cause regarding the instant application for injunctive relief. In the interim, on June 13, 2005 the IBF denied Klitschko's informal appeal and announced that Williamson would fight Byrd in August 2005 for the IBF heavyweight title belt. Subsequently, Magistrate Judge Ronald J. Hedges granted Klitschko motion for expedited documentary discovery on June 20, 2005. Klitschko did not, however, present any additional evidence at the June 22, 2005 hearing or request any further discovery. Following the hearing, a majority of the IBF's eleven member Board of Directors voted, on or about June 27, 2005, to deny Klitschko's formal appeal of his May 2005 ranking.

## ANALYSIS

### I.   STANDARD OF REVIEW

Klitschko's application, of course, turns on four familiar considerations: (1) his likelihood of success on the merits; (2) the irreparable harm he would suffer if no preliminary injunction were to issue; (3) the extent to which defendants would suffer irreparable harm if a preliminary injunction were to issue; and (4) the public interest. *See Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160,170–71 (3d Cir. 2001). Although the Court is mindful of the fact that a

plaintiff on an application for a preliminary injunction need prove only a *prima facie* case (not a certainty that he or she will win), *id. at* 173, in this case Klitschko simply has not met his burden of demonstrating a likelihood of success on the merits of his case.

## II.     Klitschko's Application for Preliminary Injunctive Relief Is DENIED

Klitschko seeks preliminary injunctive relief on the basis of his likelihood of success on Counts 1 (breach of contract), 2 (breach of the implied covenant of good faith and fair dealing), 3 (breach of implied in fact contract), and 6 (violation of public policy) of his First Amended Complaint.  (*See* Plaintiff's Brief in Support of Order to Show Cause at 18–28 [hereinafter "Pl.'s Br."].)  Each of these counts is predicated on the allegation that the IBF, in moving Williamson ahead of Klitschko in the May 29, 2005 rankings, disregarded its own ratings criteria as a result of improper influence from Don King Promotions.  (*See* Compl. ¶¶ 42, 47, 49, 53, 55, 59, 61, 75, 76.)  There is, however, simply no evidence of such improper influence.

Klitschko bases his claim of improper influence entirely on the speculation of television and radio boxing analyst Max Kellerman ("Kellerman") (*see* Compl. ¶ 42; Pl.'s Br. at 13), in whose opinion Williamson's promotion in the May rankings "can only be explained by [Don King Promotions'] desire to have a Byrd-Williamson bout, which will be very lucrative to [Don King Promotions] and will ensure that a [Don King Promotions] fighter will control the [IBF] crown and [Don King Promotions'] ability to wield undue influence over the IBF" (Decl. of Max Kellerman ¶ 24).  Kellerman supports this allegation by citing other instances where, in his opinion, IBF rankings decisions were improperly influenced by Don King Promotions.  (*See id.* ¶ 23.)  Kellerman's speculation, however, is not evidence of any purported improper influence, and Klitschko has offered no other evidence to support his allegation of improper influence.

The affidavit of Daryl Peoples ("Peoples"), the IBF's Ratings Chairman, indicates that the Klitschko's and Williamson's movement in the May 2005 rankings was based on the boxers' win/loss records, level of competition, and activity.  Specifically, Peoples has stated that: "In sum, Williamson beat a ranked fighter in April 2005 and Plaintiff beat an unranked fighter in April 2005.  A win over a ranked boxer is worth more than a win over an unranked boxer." (Decl. of Daryl Peoples ¶ 20.)  Notably, the IBF's May 29, 2005 rankings are consistent with the May 2005 rankings issued by the two other major boxing sanctioning bodies—the World Boxing Association ("WBA") and the World Boxing Council ("WBC")—each of which ranks Williamson ahead of Klitschko by a larger margin than the IBF does.   Like the IBF, the WBA moved Williamson ahead of Klitschko after the boxers' April 23, 2005 fights.  The WBC ranked Williamson ahead of Klitschko both before and after their April fights.

The Court acknowledges that it is "the public policy of [New Jersey]" that "boxing . . . should be subject to an effective and efficient system of strict control and regulation in order to . . . [p]romote the public confidence and trust in the regulatory process and the conduct of boxing." N.J.S.A. § 5:2A-2.  The Court also acknowledges the federal policy, embodied in the Professional Boxing Safety Act ("Muhammad Ali Boxing Reform Act"), 15 U.S.C. §§ 6301 *et seq*., in favor of professional boxing free of manipulated rankings.  At the same time, however, this Court must recognize that the courts of New Jersey (and like courts in other jurisdictions) ordinarily defer to the internal decisions of private organizations such as the IBF.  *See Rutledge v. Gulian*, 459 A.2d 680 (N.J. Sup. Ct. 1983).  As the Third Circuit stated in *Schulz v. United States Boxing Ass'n*, judicial intervention is warranted only if (1) the plaintiff's interest is sufficient to warrant judicial action, and (2) that interest has been subjected to an unjustifiable

interference by the defendant—that is, conduct that violates public policy or fundamental fairness.  105 F.3d 127, 135–36 (3d Cir. 1997).  Applying these principles, the Third Circuit in *Shulz* affirmed a district court's conclusion that the IBF/USBA violated New Jersey public policy when it declined to sanction Francois Botha for failing a drug test after his 1995 fight with Alex Schulz for the IBF Heavyweight Championship, even though the rules applicable to that fight expressly and clearly stated that failure of the drug test would result in disqualification and disciplinary action.  *Id*.

The facts in this case, however, are very different.  The IBF's decision to rank Williamson ahead of Klitschko in its May 2005 rankings does not evidence plain disregard of any IBF rule, as the rankings explanation published by the IBF and more fully explained in Peoples' affidavit indicates that the IBF based its promotion of Williamson over Klitschko on appropriate criteria—that is, the boxers' win/loss records, level of competition, and activity.  Without any evidence that Don King Promotions influenced the IBF's May 2005 rankings, judicial intervention would be inappropriate.  Even if this Court were to disagree with the ranking decision,[1] this Court is not, as Plaintiffs would have it, a forum for second guessing the rankings decisions of the IBF based on this Court's reconsideration of the win/loss records, level of competition, and activity of Williamson, Klitschko, and their previous opponents.  There is no

---

[1] There certainly is room for disagreement with the rankings.  Although the boxer—Jefferson—whom Williamson beat in April 2005 was in fact ranked by the IBF, Jefferson became ranked only after having defeated Ed White in November 2004, a boxer who at the time of that fight had a record of 11 wins and 11 losses and was coming off of a 7 fight losing streak (6 by knockout).  (*See* Decl. of Max Kellerman ¶ 15(a).)  In addition, although the boxer—Castillo—whom Klitschko beat in April 2005 was unranked, Castillo came into the fight with a record of 18 wins, 0 losses, and 1 draw and had, in July 2004, recently defeated Michael Moorer, whom the IBF ranked anywhere from No. 12 and No. 15 throughout the period of October 2004 to April 2005.  (*See id*. ¶ 15(b) & Exh C.)

doubt that the application of these objective criteria is a subjective enterprise, as the ranking of the top boxers differs among the WBA, WBC, IBF, and other entities that publish rankings of boxers.  (*Compare* Decl. of Daryl Peoples, Exhs. D & F *and* Reply Decl. of Max Kellerman, Exhs. A–F *with* Decl. of Shelly Finkel, Exh. J.)  That different ranking entities may disagree, however, does not demonstrate that any one boxing sanctioning body has disregarded its rankings criteria.

Although Klitschko's reliance on unsupported speculation as to improper influence by Don King Promotions is fatal to his application, it nonetheless has become clear to the Court upon consideration of his application that the professional boxing industry is fraught with apparently permissible conflicts of interest among promoters, boxers, and the major boxing sanctioning organizations.  That promoters may have significant financial interests not necessarily aligned with the interests of the boxers they promote or the interests of the sanctioning bodies that enforce the rules of the sport should be news to no one.  Given these interests, the dominance of certain boxing promoters—though not illegal—certainly undermines the credibility of rankings issued by sanctioning bodies like the IBF and makes these bodies easy targets of lawsuits based on little more than the appearance of impropriety, an appearance that this industry exudes.  At the end of the day, however, though the Court may be troubled by the conflicts of interest within the industry and the appearance of impropriety that exists due to the dominance of certain promoters, none of this establishes a clear violation of any IBF rule entitling Klitschko to preliminary injunctive relief.

******

With regard to the other factors for the Court to consider on this application for

preliminary injunctive relief, the Court finds that Klitschko and Williamson would suffer equal irreparable harm were the Court to either grant or deny Klitschko's application. That is, both boxers stand to be irreparably harmed if the Court were to re-rank them and thereby deny one of them the opportunity to fight for the IBF heavyweight title belt this August. *See Shulz*, 105 F.3d at 132–33 (implying, without deciding, that irreparable harm prong of preliminary injunction test is satisfied where allegedly wrongful conduct affects boxer's public reputation and status within boxing community). In addition, at this time the public interest does not favor granting Klitschko's application.

## **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiff Wladimir Klitschko's application for preliminary injunctive relief.

An appropriate Order accompanies this Opinion.


s/William J. Martini
_____
**William J. Martini, U.S.D.J.**

cc:     The Honorable Ronald J. Hedges, U.S.M.J.